Antonio Vélez Alvarado, Plaintiff and Appellant, v. Juan Ramón Ramos Rodríguez, Defendant and Appellee.

No. 9021. Argued April 10, 1945.—Decided March 11, 1946.

*Arturo Ortiz Toro* for appellant. *L. Mercader* and *A. Muñoz Igartúa* for appellee.

Mr. Chief Justice Travieso delivered the opinion of the court.

The complaint filed in this case sets up two causes of action. In the first it is alleged that the plaintiff is the owner in fee of a property with an area of 192.40 acres (*cuerdas*), which is situated in the municipal district of Manatí and which he acquired in 1892 by gift from his aunt Dolores Vélez Escobar; that plaintiff held possession of said property as owner until February 2, 1943; and that ever since the latter date the defendant has withheld possession of the realty in question against the will of the plaintiff, in bad faith and

without a just title. In the second cause of action, after reproducing the facts stated above, it is alleged that the Collector of Internal Revenue of Manatí sold said property at public auction, awarding it to the defendant for about $60; that in making such sale the Collector of Internal Revenue acted without jurisdiction, as he failed to demand payment of the taxes due from the plaintiff or from any other person, or to serve notice of the attachment on neighbors, or to fill out the form for the certificate of service of the attachment. It is further alleged, as a ground for nullity, that during the year 1940–41, when the public sale was made, the plaintiff owned personal property valued in excess of $1,000 which could have been but was not attached by the Collector of Internal Revenue for the collection of the delinquent taxes; and, lastly, that subsequent to the public sale, and upon learning that the property had been sold, the plaintiff obtained from the defendant the latter's promise to return the property to the former in consideration of the reimbursement to defendant of the sum paid by him, and that the defendant had refused to fulfill the agreement.

The defendant answered, objecting to the sufficiency of the complaint, and denying that the plaintiff had any right to claim the realty involved as he had never owned it, the property in question having belonged for over forty years preceding the public sale to Ramón Vélez Alvarado, a brother of the plaintiff. The defendant concluded by specifically denying all the essential averments of the complaint.

After a trial was held, the District Court of Arecibo rendered judgment dismissing the complaint and imposing costs on the plaintiff. The latter thereupon took the present appeal, and in support thereof he assigns fifteen errors. Of these, the only ones which merit consideration are those related to the sufficiency of the evidence and to the weighing of the same by the lower court. Let us make a summary of the evidence.

The plaintiff testified that he was 73 years old; that the property in question was transferred to him as a gift by his aunt Dolores Vélez when he was baptized; that ever since that time he has held possession of the property as absolute owner thereof and never as an attorney in fact of his brother Ramón Vélez Alvarado; that the defendant knew that the property belonged to the plaintiff; that in the year 1940-41, the plaintiff owned property, including cattle, jewelry, and automobiles, to an amount exceeding $10,000; that no demand for the payment of taxes on the property was ever served on him, nor was he aware that the property "La Lima" was to be sold for taxes; that subsequent to the public sale, he talked to the defendant and agreed to reimburse the amount paid by the latter at the sale and the defendant promised to return the property to the plaintiff. On cross-examination by the adverse party, he stated that the property was donated to him by his aunt when he was a baby; that he did not live in that property but in another one which is near-by; that he did not learn of the default in the payment of the taxes because there was another person who had charge of such payment, his brother Ramón Vélez Alvarado; that he knew that the property stood in the name of his brother Ramón who possessed it as owner, according to the tax receipts. Answering questions asked by his attorney, he stated that he was not sure whether it appeared of record that the taxes on the property "La Lima" were paid in the name of Ramón Vélez Alvarado; that this did not worry him because the relations between him and his brother were good and it made no difference to him whether the taxes were paid in the name of either; that in fact the taxes were paid with money belonging to the plaintiff.

Mrs. Coral Ramos Vélez, wife of the plaintiff, corroborated his testimony in all its parts. Regarding the public sale and the alleged promise on the part of the defendant to return the property to them, she testified that when she went to the

office of the collector to pay the taxes, she was informed there that the defendant Juan Ramón Ramos had purchased the property at the auction; that she called on the defendant and asked him whether it was true that he had purchased the property "La Lima," and he answered: "Yes, but it is the same thing as if you owned it any time"; that she said: "I don't believe that you intend to keep that property" and he answered: "Don't get nervous; you will not lose the property by any means; I am not going to keep it; I only did it because it was better that it should be purchased by me rather than by somebody else... Don't worry..., don't be nervous; I am not a bad person. Tell Antonio that he may rest assured that he can have his property at any time; that he need not bother about the taxes; you need not worry about the money; I will return the property at any time"; that her husband talked to the defendant and the latter in her presence told her husband the same thing that he had told her as to his being willing to return the property to them; that sometime afterward she again called on the defendant and told him that she wished to adjust the matter of the property and he again stated that he did not intend to keep it for himself; that later she tendered to him the amount he had spent and he told her: "We will see about that," and shortly thereafter suit was brought to recover the property; that Juan Ramón Ramos knew that the property belonged to Antonio Vélez Alvarado, as on many occasions he had gone there on horseback and inspected the property together with the spouses telling the latter that they could obtain a higher yield from the property if they cultivated it.

Virgilio Ramos Muñiz, upon being called as a witness for the plaintiff, testified that he was a brother of the defendant; that he knew the property "La Lima" ever since he was a child and that he always regarded Antonio Vélez Alvarado as its owner, who cultivated it and gathered its products; that the defendant knew "as well as I did," that the property

belonged to the plaintiff; that in 1940 the witness was a lessee of the property and that it was leased to him by Antonio Vélez Alvarado, as owner; that the property is now worth about $15,000; that he occupied it as lessee until 1942.

Juan Rosario Maldonado, a resident of the ward (*barrio*) of Coto Norte, Manatí, where the property in question is located, was called to testify. His name appears at the foot of a printed form entitled "Notice of Attachment," dated August 1, 1940, and signed "Juan Rosario." Upon the document being shown to him, he stated that that was not his signature; that he had never been requested by any person to sign as a witness of the delivery to Antonio Vélez Alvarado of a document regarding the attachment of personal property; that he knew how to sign but that said signature was not his; that there was another Juan Rosario in the same ward, his full name being Juan Rosario Rosario.

The defendant introduced as his only evidence a stipulation whereby the attorneys for the parties agreed that if the defendant were called to testify he would ratify under oath the allegations of the answer and deny the alleged promise to return the property to the plaintiff.

The principal basis of the judgment appealed from is that the evidence introduced failed to establish the existence of legal facts or grounds sufficient to justify the annulment of the public sale. We will not discuss that question because, even conceding that all the legal requisites for such sale were complied with, we would always have to reach the unavoidable conclusion that the lower court erred in dismissing the complaint and in not rendering judgment ordering the return of the property to the plaintiff.

The evidence introduced shows that the property involved in this litigation is worth $15,000, and that it was awarded to the defendant for sixty and odd dollars, the amount of the taxes then due. The defendant is a son of a cousin of the plaintiff; he was acquainted with the property and knew that the same belonged to the plaintiff.

The lower court, after expressing its regret that "the property should have been sold for less than its value," concluded that the plaintiff had been guilty of negligence "in not paying the amount of the taxes and in failing to redeem the property opportunely," and it added: "We cannot understand how the plaintiff allowed the time for redemption to elapse when it was so easy to deposit the amount and to obtain the redemption of the property from the registry."

An explanation of the causes or reasons which led the plaintiff into allowing the period for redemption to elapse clearly appears from the evidence. When the plaintiff and his wife learned that the property had been sold and that the purchaser at the tax sale was their cousin, defendant herein, they called on him in order to ascertain whether it was his intention to retain the property for · the negligible sum of sixty and odd dollars if said sum was not reimbursed to him, within the time fixed by law for the redemption of properties sold for delinquent taxes. The defendant assured them that he did not intend to keep the property and that he was willing to return it to the plaintiff "at any time." Relying on the protestations of friendship by the defendant and on his promise that he would return the property "at any time," the plaintiff, who had sufficient funds to redeem the property, was induced to believe that the defendant would convey the title over the property to him even after the expiration of the time for redemption. We think that the conclusion reached by the lower court, to the effect that the plaintiff had been negligent in not redeeming the property opportunely, is erroneous, for the evidence shows that if the plaintiff failed to exercise the right of redemption in time this was due to the fact that he had been led into inaction by the promise of the defendant to return the property to the plaintiff at any time, upon reimbursement of the amount paid by him at the public sale.

In our judgment, it would be highly unjust and contrary to the most elementary principles of equity to allow

the plaintiff, as a result of his conduct, to unjustly enrich himself at the expense of the plaintiff, by acquiring for an insignificant sum a property of about 200 acres valued at not less than $15,000. Having induced the plaintiff to believe that he, the defendant, would accept the price for the redemption and reconvey the title to the property, even after the expiration of the statutory period, the defendant is estopped to allege as a defense that when the plaintiff offered to reimburse the amount paid by the defendant at the tax sale the period for redemption had already expired.

██ We find that the doctrine of constructive trust which formed the basis of our decision in *Porrata* v. *Fajardo Sugar Co. of Puerto Rico,* 57 P.R.R. 615, 629, is applicable to the facts of the present case. Where, as in the instant case, a defendant holds title to a property but is subject to an equitable duty to convey it to the plaintiff on the ground that he would be unjustly enriched if it were permitted to retain it, a constructive trust arises, which is imposed as a remedy to prevent unjust enrichment. Restatement of the Law—Restitution, § 160, pp. 640–44. The relief consists in placing each of the parties in the position in which he was before defendant acquired the property, and compelling the defendant, as trustee, to the specific performance of the trust by conveying the title over the property to the beneficiary, who must refund to said trustee the amount paid by the latter for the purchase of the property and for its preservation, together with interest thereon up to the time of such reimbursement. See *Laing* v. *McKee,* 87 Am. Dec. 738.

For the reasons stated the judgment appealed from will be reversed and another rendered instead in favor of the plaintiff, ordering the defendant to deliver to the plaintiff the possesion of the property and to convey to him the title acquired by the defendant in virtue of the award made in his favor by the Collector of Internal Revenue of Manatí at the public sale held on January 9, 1941, and ordering the plaintiff

to reimburse to the defendant the amounts paid by the latter as the purchase price at the public sale and for the preservation of the property, plus the corresponding interest thereon up to the date of such reimbursement. The defendant should render an account of, and pay to the plaintiff, the amount of the fruits, rents, and profits received by him during the time he has been in possession of the property, plus the costs of this action including the sum of $300 as attorney's fees.

Mr. Justice Córdova did not participate herein.